IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JESSE JONES, | : |
| Plaintiff, | : |
| v. | : |
| MARIETTA NONDESTRUCTIVE TESTING, LLC, *et al.*, | : CIVIL ACTION NO.<br>: 1:18-CV-5384-LMM |
| Defendants. | : |

## **ORDER**

This case comes before the Court on Defendants' Motion for Reconsideration [64]. After due consideration, the Court enters the following Order:

### I. BACKGROUND

In this retaliatory-firing case, Defendants Marietta NDT and Steve Norred invite the Court to reconsider its Order of October 30, 2019 denying their Motion for Summary Judgment. The Court described the facts underlying this case in that Order. See Dkt. No. [62].

In their Motion for Reconsideration, Defendants argue that "the Court failed to appreciate the dispositive nature of one crucial and undisputed fact—the decision to terminate [Plaintiff] Jones's employment was made before he engaged in the alleged protected activity." Dkt. No. [64-1] at 1. This fact, Defendants argue,

requires summary judgment in their favor under Supreme Court and Eleventh Circuit authority. Id. (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001); Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 745–46 (11th Cir. 1996)).

## II. LEGAL STANDARD

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), N.D. Ga. Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003). A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Id. at 1259 (quoting Brogdon ex rel. Cline v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)).

Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001). Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps

of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

### III. DISCUSSION

Defendants argue that the Court should reconsider its denial summary judgment because of "a clear error of law or fact." Dkt. No. [64-1] at 2. They argue that the Court erred when it failed to give dispositive weight to Mr. Norred's purported decision to fire Plaintiff before Plaintiff engaged in protected activity. The rule that Defendants ask the Court to apply is this: "If the decision-maker decides or even contemplates discharging an employee prior to the date the employee engages in protected activity, there can be no retaliation and summary judgment must be granted." Dkt. No. [73] at 3.

But in asking the Court to apply this rule, Defendants are asking the Court to assume that their version of events is true—something the Court cannot do at summary judgment. The rule does not attach here because Plaintiff has presented facts to dispute Defendants' claim that Defendant Norred decided to fire (or was contemplating firing) Plaintiff before Plaintiff claimed about overtime.

Defendants' Supreme Court authority is distinguishable because it involved uncontradicted evidence. The plaintiff in Breeden "relie[d] wholly on the temporal proximity of the filing of her complaint on April 1, 1997 . . . and [her supervisor's] statement . . . on April 10, 1997 that she was considering transferring plaintiff to the [new] position." Breeden, 532 U.S. at 272. (second alteration added). That reliance was fatal to the Breeden plaintiff because she

3

"did not serve [the defendant] with the summons and complaint until April 11, 1997, one day *after* [the supervisor] made the statement, and [the supervisor] filed an affidavit stating that she did not become aware of the lawsuit until after April 11, a claim that [the plaintiff] did not challenge." Id. (alterations added). In other words, the pre-complaint termination decision in Breeden was uncontested. See also Chukes v. Sailormen Inc., 648 F. App'x 779, 782 (11th Cir. 2016) (affirming district court's grant of summary judgment where the plaintiff "[did] not dispute that [her supervisor] had completed her termination paperwork and notified [the area manager] before [plaintiff] filed her Charge").

Defendants also cite Mize, in which the Eleventh Circuit found that a firing following shortly after a protected complaint did not confirm that the firing was because of the complaint. See Mize, 93 F.3d at 745. The Mize court only briefly discussed that the termination decision preceded the protected activity: "[T]here [wa]s no reasonable basis for rejecting [the supervisor's] testimony that he made the decision on March 6," though the Mize plaintiff claimed the decision was made on April 3 by a different authority. See id. Defendants cite Mize to argue that testimony about a pre-complaint firing decision *requires* that the Court find no retaliation, see Dkt. No. [64-1] at 4, but that was not the Circuit's holding. In Mize, the supervisor testified that he decided to fire the plaintiff almost a month before the date when *another* authority decided to fire her—the authority against whom the Mize plaintiff claimed retaliatory discharge. Mize, 93 F.3d at 745. And

4

the Mize court viewed that testimony as just one piece of evidence against a plaintiff whose own evidence was insufficient to survive summary judgment.

Defendants in this case ask the Court to give their CEO's statement the same decisive weight that the district court and Supreme Court gave the supervisor's statement in Breeden. But this Court cannot do that; unlike the supervisor's statement in Breeden, the CEO's statement here is contested. To be sure, Defendants describe as "undisputed" their contention that Mr. Norred decided to fire Plaintiff before Plaintiff made a protected complaint. Dkt. No. [64-1] at 1. But that description is inaccurate because Plaintiff has produced facts that contradict Defendants' narrative. Since a reasonable jury could believe those facts and find for Plaintiff, the Court denied Defendants' Motion for Summary Judgment. See Dkt. No. [62].

The Court described and considered Plaintiff's evidence in its order denying summary judgment, see id., but it reemphasizes that evidence here. Defendants claim in their Statement of Material Facts that "Norred made the decision to terminate Plaintiff's employment on July 31, 2018, after learning, that same day, about the written warning dated July 30, 2018." Dkt. No. [44-2] ¶ 55. Plaintiff responded to this claim as follows:

> DENIED, except that Plaintiff ADMITS Defendant Norred made the decision to terminate his (Plaintiff's) employment.
> Plaintiff DENIES that Defendants made the decision to terminate Plaintiff on July 31, 2018. Rather, there is sufficient evidence from which a reasonable jury could conclude that Defendants decided only to discipline Plaintiff for the error listed in

5

>the July 30 warning, but changed its mind after Plaintiff made one too many complaints about not being paid proper overtime (last complaint on August 2), and decided on August 2, 2018 to convert the warning to a termination in retaliation for the complaint.

Dkt. No. [53-1] at 36. Plaintiff produced additional evidence supporting this theory including the following: (1) Mr. Norred's frustrated reaction to Plaintiff's August 2, 2018 complaint about the company's overtime pay practices (one day before his firing); (2) Mr. Norred's waiting until the day of the overtime complaint to tell human resources to prepare Plaintiff's termination paperwork; and (3) Defendants' allowing Plaintiff to work until the end of the week on August 3.

Plaintiff also introduced evidence of his strong work history, which contradicted Defendants' narrative that he was a troublesome employee. This evidence included (1) a positive performance review; (2) previous refusals to write Plaintiff up; (3) Defendants' retaining Plaintiff over his supervisor when they had a spat; (4) Defendants' giving Plaintiff a 12% raise in March 2018; and (5) the total absence of write-ups or negative evaluations before Plaintiff self-reported his error on July 31, 2018. See Dkt. No. [69] at 15.

And finally, Plaintiff claimed that he complained about overtime at least once per week until he was fired. See Dkt. No. [53] at 11–12 (citing Dkt. No. [53-4] at 12). The Court must give proper weight to this testimony at summary judgment. See Anderson v. Liberty Lobby, 477 U.S. 242, 255

6

(1986) ("The evidence of the nonmovant is to be believed."). So even if Mr. Norred had decided to fire Plaintiff on July 31, instead of on August 2, Mr. Norred still might have made that decision based on Plaintiff's protected activity. A reasonable jury could view the August 2 complaint as the straw that broke the camel's back.

Taken together, this evidence was enough to create a triable issue as to whether and Plaintiff's protected activity was the cause of his firing. "If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true." Allen v. Bd. of Pub. Ed., 495 F.3d 1306, 1314 (11th Cir. 2007). The evidence was therefore to sufficient to survive summary judgment. The Court **DENIES** Defendants' motion to reconsider its summary-judgment order.

### IV. CONCLUSION

Based upon the foregoing, Defendants' Motion for Summary Judgment [64] is **DENIED**.

**IT IS SO ORDERED** this 6th day of January, 2020.

_____
**Leigh Martin May**
**United States District Judge**